IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50699
_____

QUORUM HEALTH RESOURCES, L.L.C.,

Plaintiff/Appellee/Cross-Appellant,

V.

MAVERICK COUNTY HOSPITAL DISTRICT
d/b/a FORT DUNCAN MEDICAL CENTER,

Defendant/Appellant/Cross-Appellee,

AND

TEXAS HOSPITAL INSURANCE NETWORK, INC.,
TEXAS HOSPITAL INSURANCE EXCHANGE,

Defendants/Cross-Appellees.

Appeals from the United States District Court
for the Western District of Texas

September 30, 2002

Before BARKSDALE and STEWART, Circuit Judges, and ROSENTHAL,[*]

District Judge.

ROSENTHAL, District Judge:

_____

[*] District Judge of the Southern District of Texas, sitting by designation.

1

The primary issue in this appeal is whether a contractual indemnity provision meets the requirements of the Texas express negligence rule, entitling the indemnitee to relief from a judgment based on its own negligence.  By cross-appeal, the indemnitee challenges its insurer's compliance with the duty to defend.  The insurer, in turn, challenges the insured's compliance with the cooperation clause in the insurance policy.

This court concludes that, as a matter of law, the contract does not meet the Texas express negligence rule's requirements for indemnification of losses arising from the indemnitee's own negligence.  As to the insurance issues, the record discloses genuine issues of fact material to determining whether the insurer breached its duty to defend.  We reverse the district court's grant of summary judgment, rendering as to the indemnification issue and remanding as to the duty to defend issues.  The reasons are explained below.

## I.  Background

In 1990, Quorum Health Resources, L.L.C. ("Quorum"), a hospital management company, entered into a Management Agreement with the Maverick County Hospital District d/b/a Fort Duncan Medical Center (the "Hospital").[1]  The Hospital was insured by the

---

[1]    The  Hospital entered into a five-year Management Agreement  in  1990  with  HCA Management Company, Quorum's predecessor, with effective dates from May 14, 1990 to May 14, 1995.  The Hospital and Quorum renewed the Management Agreement in May 1995, with effective dates from May 14, 1995 to May 13, 2000.  The provisions in the Agreements setting out the Hospital's

2

Texas Hospital Insurance Exchange and Texas Hospital Insurance Network, Inc. (collectively, "THIE"). Quorum was an additional named insured on the Hospital's policy.[2]

In June 1996, David and Veronica Rodriguez filed suit in state court in Maverick County, Texas, on behalf of themselves and their minor daughter, Cristina. The Rodriguez family sued the Hospital and the obstetrician, three registered nurses, and the nurse practitioner present at Cristina's birth. The Rodriguez plaintiffs alleged medical malpractice during the delivery that left Cristina with severe mental and physical disabilities.[3] The Hospital timely notified THIE of the lawsuit. THIE assigned a law firm to represent all the defendants.

In March 1997, the Rodriguez plaintiffs joined the Hospital's management company, Quorum, as an additional defendant. THIE assigned the same lawyer to represent Quorum, along with the previously named defendants. The joint representation proceeded until April 13, 1998, when Quorum asserted a conflict of interest

---

obligation to indemnify Quorum are identical. The reciprocal indemnity provisions, setting out Quorum's obligation to indemnify the Hospital, are slightly different in the two Agreements.

[2] The Hospital and THIE submitted insurance policy No. CG 00 25 42 as part of the summary judgment record. The policy provides for coverage of $100,000 per medical incident and $300,000 aggregate. Quorum is listed as an additional insured under the policy.

[3] David X. and Veronica Rodriguez, as Next Friends to Christina Rodriguez, a Minor, v. Quorum Health Resources, L.L.C. f/k/a Quorum Health Resources, Inc., Cause No. 96-06-13873-CV, 365th District Court of Maverick County, Texas.

and requested separate counsel. The parties dispute what happened next. THIE asserts that it offered Quorum separate counsel from its list of approved attorneys, but Quorum rejected the lawyer offered and insisted on an attorney who was not on THIE's list. Quorum agrees that THIE offered a lawyer, but asserts that this lawyer declined the representation and that THIE failed to offer a replacement.

The Rodriquez suit proceeded to trial in Eagle Pass, Texas, in November 1999. Quorum was represented by counsel it had selected without THIE's participation or involvement. Quorum's excess insurer, American Continental Insurance Co., paid the costs of Quorum's defense. Before trial began, the Rodriquez plaintiffs nonsuited all the defendants except Quorum. The parents, David and Veronica Rodriguez, nonsuited their individual claims against Quorum. The trial proceeded with Quorum as the only defendant, on claims for actual and exemplary damages for simple and gross negligence, on behalf of the minor child.

Plaintiffs tried the case on the basis of the Ninth Amended Petition, which alleged that Quorum committed twenty-four separate acts of negligence. The allegations included negligent hiring of untrained nursing personnel, failing properly to train nursing personnel, failing to enforce the Hospital's personnel policies, and negligently hiring and training the Quorum employees who managed the Hospital. The petition did not allege that Quorum was vicariously liable for the acts or omissions of the Hospital's

4

medical staff or the obstetrician who attended the delivery, but who was not a Hospital employee. The petition did allege that Quorum was vicariously liable for the negligence of two of Quorum's own employees working at the Hospital under the Management Agreement: the Hospital Administrator and the Controller.[4]

The jury found that Quorum negligently performed services to the Hospital that "increased the risk of injury or harm to a patient of The Hospital" and proximately caused injury or harm to a patient "by reliance of The Hospital upon Quorum's undertaking to perform such services." The jury found Quorum 65 percent responsible for Cristina Rodriguez's injuries. The jury also found the attending obstetrician negligent and assessed comparative causation at 35 percent. The jury awarded $52 million in actual damages and, finding malice on the part of Quorum, awarded an additional $7.5 million in exemplary damages.

Plaintiffs settled with the obstetrician before the verdict. In an Amended Final Judgment, the trial court deducted the amount of the settlement and added prejudgment interest, awarding actual damages of approximately $57 million before postjudgment interest. The trial court disregarded the jury's finding of malice and ordered that plaintiffs not recover exemplary damages against Quorum.

---

[4] The jury found that the Administrator and Controller, who were Quorum employees, were acting as Quorum's employees at the relevant times and not as the Hospital's "borrowed employees."

5

Quorum filed a declaratory judgment suit in federal district court, alleging that the indemnity provision in its Management Agreement required the Hospital to indemnify Quorum for the Rodriquez judgment and required the Hospital to defend Quorum in the Rodriquez suit. Quorum also sought a declaratory judgment that THIE had breached its duty to defend Quorum under the insurance policy and owed Quorum a duty to indemnify for the resulting judgment, up to the policy limits.

Both the 1990 and 1995 Management Agreements between the Hospital and Quorum contained the following indemnity provision:

> Hospital agrees to indemnify and hold harmless Quorum, its Affiliates, and each of their shareholders, directors, officers, employees, and agents ("Quorum Indemnified Party") from and against any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees and expenses related to the defense of any claims), joint or several, which may be asserted against any of the Quorum Indemnified Parties or for which they may now or hereafter become subject arising in connection with the activity of the Hospital ("Quorum Claim"), including but not limited to: (i) alleged or actual failure by the Board to perform any of its duties hereunder, (ii) any pending or threatened medical malpractice or other tort claims asserted against Quorum; (iii) any action against Quorum brought by any of the Hospital's current or former employees or Medical Staff members; (iv) any act or omission by any Hospital employee, Medical Staff member, or other personnel; and (v) any violation of any requirement applicable to the Hospital under any federal, state or local environmental, hazardous waste or similar law or regulation; provided that such claims have not been caused by the gross negligence or willful or wanton misconduct of the Quorum

6

> Indemnified Party seeking indemnification pursuant to this Agreement.

The 1990 Management Agreement contained the following provision setting out Quorum's reciprocal indemnity obligation to the Hospital:

> [Quorum] agrees to indemnify and hold harmless the Hospital and its shareholders, directors, officers or trustees ("Hospital Indemnified Party") from and against all losses, claims, damages, liabilities, costs and expenses (including reasonable attorney's fees and expenses related to the defense of any claims), joint or several, which may be asserted against any Hospital Indemnified Party ("Hospital claim"), as a result of any personnel or other action brought against the Hospital Indemnified Party by any Key Person [the Administrator and Controller] relating to any acts performed by such Key Person within the scope of his or her employment by [Quorum]; provided that such Hospital Claims have not been caused by the gross negligence or willful or wanton misconduct of the Hospital Indemnified Party seeking indemnification pursuant to this Agreement.

The 1995 Management Agreement contained this same provision, with one change. The 1995 Agreement contained the provision stating that Quorum would indemnify the Hospital for "losses, claims, damages, liabilities, costs and expenses" as a result of actions brought by a "Key Person." However, the 1995 Agreement added that Quorum would indemnify the Hospital for "losses, claims, damages, liabilities, costs and expenses" from claims asserted against the Hospital "as a result of . . . the sole negligence of Quorum outside the scope of its employment; provided that such Hospital Claims have not been caused by the gross negligence or willful or

7

wanton misconduct of the Hospital Indemnified Party seeking indemnification pursuant to this Agreement."

The insurance policy THIE issued to the Hospital provided, in relevant part, as follows:

> [THIE] shall have the right and duty to defend any suit against the insured seeking damages because of such injury even if any of the allegations of the suit are groundless, false, or fraudulent. The company may make such investigation and, with the written consent of the insured, such settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of the judgment or settlements.

The policy further provided that

> the insured and each of its employees shall cooperate with the company and, upon the company's request, assist . . . in the conduct of suits . . . . No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy . . . .

Quorum and the Hospital filed cross-motions for summary judgment as to the enforceability of the Hospital's obligation to indemnify Quorum for the $52 million judgment. Quorum and THIE filed cross-motions for summary judgment as to whether THIE had breached its duty to defend and whether Quorum had breached its duty of cooperation. The district court held that: (1) the indemnity provision in the Management Agreement between the Hospital and Quorum met the Texas express negligence rule and required the Hospital to indemnify Quorum for the damages resulting

8

from Quorum's own negligence, making the Hospital liable for the amount Quorum paid to settle the Rodriquez judgment, approximately $31 million; (2) the Hospital did not owe Quorum common law indemnification under Texas law; (3) the $100,000 statutory damage cap applicable to the Hospital as a governmental unit of the State of Texas under the Texas Tort Claims Act[5] did not limit the Hospital's obligation to indemnify Quorum; (4) the Hospital did not owe Quorum a duty to defend because the Management Agreement permitted, but did not require, the Hospital to participate in the defense of any action against Quorum; (5) THIE did not breach its duty to defend Quorum under the insurance policy; and (6) THIE was not obligated to indemnify Quorum for the Rodriquez judgment because Quorum breached its duty to cooperate with the insurer under the policy by rejecting the defense counsel THIE offered. All parties appealed.

The Hospital appeals on two grounds: the indemnity provision in the Management Agreement fails the express negligence test under Texas law and is unenforceable as to losses resulting from Quorum's own negligence; and the Hospital's indemnity obligations to Quorum, if any, are limited by the statutory cap limiting tort damages against a State hospital district. Quorum asserts it is entitled to contractual indemnity from the Hospital for the $31 million that Quorum paid to settle with the Rodriquez

_____

[5] TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109 (Vernon 1997 & Supp. 2002).

9

family.  Quorum and the Hospital agree that the indemnification issues between them are properly decided as a matter of law.

Quorum cross-appeals from the district court's grant of summary judgment, holding that THIE did not breach its duty to defend Quorum and that Quorum did breach its duty to cooperate with THIE.  Quorum argues that there are genuine issues of fact material to determining whether THIE satisfied its obligation to provide counsel to Quorum or whether Quorum rejected the lawyer THIE provided.  Quorum argues that the evidence in the record either negated THIE's claim that Quorum breached the cooperation clause or, at least, raised genuine factual disputes that precluded summary judgment. Quorum also asserts that the record contains no evidence that THIE suffered prejudice as a result of Quorum's actions or, at least, raised genuine factual disputes as to whether THIE lost any right under its policy, precluding summary judgment. Quorum argues that the district court's ruling on these issues should be reversed and remanded for trial.

Because of our resolution of the Hospital's first ground for appeal, we do not decide whether the Hospital's indemnity obligations to Quorum are limited by the Texas statutory cap on tort damages against a State hospital district.  The other bases for appeal and cross-appeal are examined below.

## II. The Standards of Review

A grant of summary judgment is reviewed de novo. See Dallas County Hosp. Dist. v. Associates' Health and Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002). The interpretation of a contract is a question of law, subject to de novo review. Fina, Inc. v. ARCO, 200 F.3d 266, 268 (5th Cir. 2000); Am. States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir. 1998); Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins., 99 F.3d 695, 700 (5th Cir. 1996). Summary judgment is appropriate when there "is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Conoco, Inc. v. Medic Systems, Inc., 259 F.3d 369, 371 (5th Cir. 2001). The court must view facts and inferences in the light most favorable to the party opposing the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. See Liberty Lobby, 477 U.S. at 248; Merritt-Campbell, Inc. v. RxP Prods., Inc., 164 F.3d 957, 961 (5th Cir. 1999). Credibility determinations are not part of the summary judgment analysis. Liberty Lobby, 477 U.S. at 247-49.

Texas law applies in this diversity case, requiring this court to consider the Texas express negligence rule for indemnity contracts. "'[I]n the absence of explicit guidance from the state courts, [this court] must attempt to predict state law, not to create or modify it.'" Assoc. Int'l Ins. Co. v. Blythe, 286 F.3d

11

780, 783 (5th Cir. 2002) (quoting <u>United Parcel Serv., Inc. v.</u> <u>Weben Indus., Inc.</u>, 794 F.2d 1005, 1008 (5th Cir. 1986)). Although there is no Texas Supreme Court case involving the exact contract language at issue here, Texas Supreme Court cases applying the applicable rules of contract construction to similar indemnity provisions provide ample guidance for this court to "substitute [an] informed judgment for [an] informed guess[]" as to how a Texas court would rule if presented with these facts. <u>Nat'l Educ.</u> <u>Assoc., Inc. v. Lee County Bd. of Public Instruction</u>, 467 F.2d 447, 449 (5th Cir. 1972); <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 79-80 (1938); <u>Harris v. Parker College of Chiropractic</u>, 286 F.3d 790, 793 (5th Cir. 2002).

## III. Analysis

### A. The Texas Express Negligence Rule

The express negligence rule is a rule of contract interpretation that applies specifically to agreements to indemnify another party for the consequences of that party's own negligence. Under the express negligence rule, contracting parties seeking to indemnify one party from the consequences of its own negligence must express that intent in specific terms, within the four corners of the document. <u>Ethyl Corp. v. Daniel Const. Co.</u>, 725 S.W.2d 705, 707-08 (Tex. 1987). The Texas Supreme Court adopted this rule in the <u>Ethyl</u> case, rejecting the less stringent "clear and unequivocal" test, in recognition of the fact that "indemnification

12

of a party for its own negligence is an extraordinary shifting of risk."[6]  Id.; Dresser Industries, Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993).  The express negligence rule is based on a requirement of fair notice.  Dresser, 853 S.W.2d at 506.

In Ethyl, a third party successfully sued Ethyl, the premises owner, for injuries occurring during the performance of Ethyl's contract with Daniel, the contractor.  725 S.W.2d at 706-07.  Ethyl then sued Daniel, seeking contractual indemnity.  The jury found both Ethyl and Daniel negligent, apportioning liability for the third party's injuries ninety percent to Ethyl and ten percent to Daniel.  The contractual indemnity provision stated as follows:

> [Daniel] shall indemnify and hold [Ethyl]
> harmless against any loss or damage to persons
> or property as a result of operations growing
> out of the performance of this contract and
> caused by the negligence or carelessness of
> [Daniel], [Daniel's] employees,
> Subcontractors, and agents and licensees.

Id. at 707.  The Texas Supreme Court held that this contractual language did not meet the express negligence test.  Ethyl argued that it was entitled to indemnification from Daniel.  The Court held that the language providing indemnification for "any loss . .

---

[6]    Under the "clear and unequivocal" test, a court examines "whether the contract between the parties expresses in clear and unequivocal language the intent of the indemnitor to indemnify the indemnitee against the consequences of the indemnitee's own negligence whether such negligence was the sole proximate cause of the injury or a proximate cause jointly and concurrently with the indemnitor's negligence."  725 S.W.2d at 707.

13

. as a result of operations" did not expressly state that the indemnity obligation included losses resulting from Ethyl's own negligence. The Texas Supreme Court held that under the express negligence rule, "[i]ndemnitees seeking indemnity for the consequences of their own negligence which proximately causes injury jointly or concurrently with the indemnitor's negligence must also meet the express negligence test." Id. at 708. The contract contained "no provision for contractual comparative indemnity," id., and the Texas Supreme Court refused to imply such an obligation from the contract language.

The Texas Supreme Court explained the need for the strict requirements of the express negligence doctrine:

> As we have moved closer to the express negligence doctrine, the scriveners of indemnity agreements have devised novel ways of writing provisions which fail to expressly state the true intent of those provisions. The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor. The result has been a plethora of law suits to construe those ambiguous contracts. We hold the better policy is to cut through the ambiguity of those provisions and adopt the express negligence doctrine.

Id. at 708-09. Whether a contractual indemnity provision complies with the express negligence doctrine is a question of law for the court. See Dresser, 853 S.W.2d at 509; Fisk Elec. Co. v. Constructors & Assocs., Inc., 888 S.W.2d 813, 814 (Tex. 1994).

1. **Does the Express Negligence Rule Apply?**

14

The express negligence rule applies if Quorum seeks indemnification for its own acts of negligence or for the joint or concurrent negligence of Quorum and the Hospital. "Indemnitees seeking indemnity for the consequences of their own negligence which proximately causes injury jointly or concurrently with the indemnitor's negligence must also meet the express negligence test." Ethyl, 725 S.W.2d at 708. If Quorum is seeking indemnification for the consequences of the Hospital's negligence, the express negligence doctrine does not apply. See id.; Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423-24 (Tex. 2000); Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 230 (5th Cir. 2002).

Quorum argues that the judgment in the Rodriquez suit is not based on Quorum's own negligence, but rather solely on the negligence of the Hospital Board and the Hospital personnel who attended Cristina Rodriguez's delivery. The Rodriquez plaintiffs nonsuited the Hospital and its employees before trial. The Rodriquez jury answered questions only as to the negligence of Quorum and the obstetrician, who was not a Hospital employee. The jury found that Quorum negligently fulfilled duties it owed to the patients of the Hospital. The jury answered the comparative causation issue by finding Quorum 65 percent at fault and the obstetrician 35 percent at fault. The jury answered questions finding that Quorum was liable for the negligence of the Quorum

15

Administrator and Controller, Quorum employees provided to the Hospital under the Management Agreement.

The record does not support Quorum's argument that the damages awarded resulted from the sole negligence of the Hospital and its employees and staff members, not Quorum's employees. The express negligence rule applies.

**2.    Does the Contract Language Satisfy the Express Negligence Rule?**

Quorum argues that the language of the indemnity provision satisfies the Texas express negligence rule, so as to require the Hospital to indemnify Quorum from the consequences of Quorum's own negligence. Quorum relies on one general provision and two more specific provisions of the Management Agreement paragraph entitled "Indemnification by Hospital."

The first provision Quorum invokes is the statement that the Hospital will indemnify Quorum from "losses, claims, damages, liabilities, costs, and expenses . . . arising in connection with the activity of the Hospital ('Quorum Claim')." The second provision is the definition of "Quorum Claim" as "including but not limited to . . . any pending or threatened medical malpractice or other tort claims asserted against Quorum." The third provision is the statement that the Hospital will not indemnify Quorum for claims caused by Quorum's "gross negligence or willful or wanton misconduct." As to the second and third provisions, Quorum argues that because a medical malpractice claim is a negligence claim, and

16

because the express exclusion for gross negligence is "tantamount to the express inclusion of ordinary negligence," the contract, construed as a whole, sufficiently expressed the parties' intent to require the Hospital to indemnify Quorum for its own ordinary negligence.[7] The Hospital argues that the contract language fails to meet the stringent requirements of the Texas express negligence rule.

This court compares the language of the Management Agreement indemnity provision to similar provisions that courts have examined under the Texas express negligence standard. The comparison reveals that the Management Agreement provision does not meet the Texas express negligence rule and cannot be the basis for requiring the Hospital to indemnify Quorum for the judgment resulting from its own negligence or the concurrent negligence of the indemnitor and indemnitee.

The Texas Supreme Court has consistently refused to enforce indemnity agreements that do not expressly and specifically provide for indemnification for the indemnitee's own negligence. General, broad statements of indemnity are not effective to shift the consequences of the indemnitee's own negligence to the indemnitor. The indemnity provision that the Court found

_____

[7]     Although the district court found that general principles of contract construction supported Quorum's argument, the court accurately noted that "[i]t is absurd that a county hospital district, which has a $100,000.00 statutory cap on its liability, would intentionally agree to indemnify another party for an unspecified amount."

17

ineffective in Ethyl, the case in which Texas adopted the express negligence rule, provided that the contractor would indemnify the owner against "any loss . . . [incurred] as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of Contractor [indemnitor] . . . ." 725 S.W.2d at 708. The Texas Supreme Court rejected the argument that this broad language sufficiently expressed the intent that the contractor/indemnitor would absorb the consequences of the owner/indemnitee's negligence, including joint negligence. Id.

The Texas courts have rigorously applied the express negligence rule since Ethyl was decided. In Gulf Coast Masonry, Inc. v. Owens-Illinois, Inc., 739 S.W.2d 239 (Tex. 1987), a contractor agreed to indemnify the plant owner for losses "arising out of or in any way connected with or attributable to the performance or non-performance of work hereunder by contractor. . . ." Id. at 240. The Texas Supreme Court held that the clause failed the express negligence test because the language did not specifically and expressly state that the losses included those resulting from the owner's own negligence. Id. In Fisk Elec. Co. v. Constructors & Assoc. Inc., the indemnity clause provided that "[t]o the fullest extent permitted by law, [Fisk] shall indemnify, hold harmless, and defend [Constructors] ... from and against all claims, damages, losses, and expenses, including but not limited to attorney's fees..." arising out of or resulting from the performance of Fisk's work. 888 S.W.2d at 814. The Texas

18

Supreme Court held that language insufficiently specific to provide "fair notice" that Fisk was obligated to indemnify Constructors for its own negligence. Id. at 815-16; see also DDD Energy, Inc. v. Veritas DGC Land, Inc., 60 S.W.3d 880, 883 (Tex. App.–Houston [14th Dist.] 2001, n.p.h.) (holding that the following clause did not expressly state that Veritas would indemnify DDD for DDD's own negligence: "Veritas shall indemnify, defend, . . . [DDD] for all claims, damages, causes of actions, and liabilities resulting from Veritas' failure to conduct seismic operations in an orderly and workmanlike manner . . . ").

The Texas Supreme Court has applied the express negligence rule so strictly that contracts defining what is included in an indemnity obligation by stating what is excluded fail the rule's requirements. In Singleton v. Crown Cent. Petroleum Corp., 729 S.W.2d 690 (Tex. 1987), the plaintiff sued the premises owner and the contractor, for injuries caused by the contractor's employee. The jury found that the owner and contractor were concurrently negligent. The trial court required the contractor to indemnify the owner based on an indemnity agreement that provided as follows:

> Contractor agrees to . . . indemnify . . . owner . . . from and against any and all claims . . . of every kind and character whatsoever, . . . for or in connection with loss of life or personal injury . . . directly or indirectly arising out of . . . the activities of contractor . . . *excepting only*

19

> claims arising out of accidents resulting from the sole negligence of owner.

713 S.W.2d 115, 118 (Tex. App. - Houston [1st Dist.] 1986) (emphasis added). The Texas Supreme Court held that the indemnity agreement did not satisfy the express negligence rule. Singleton, 729 S.W.2d at 691. The Court explained this result more fully in a later opinion:

> The indemnity contract in Singleton did not specifically state that [Contractor] was obligated to indemnify [Owner] for [Owner's] own negligence. Rather, it specifically stated what was not to be indemnified, "claims resulting from the sole negligence of the owner." The agreement was an implicit indemnity agreement requiring [Owner] to deduce his full obligation from the sole negligence exception.

Atlantic Richfield Co. v. Petroleum Personnel, Inc., 768 S.W.2d 724, 725 (Tex. 1989).

Under these Texas Supreme Court cases, a contract subject to the express negligence rule cannot define what is included in an indemnity provision by stating what obligations are outside that indemnity agreement. Such implicit agreements to require an indemnitor to indemnify against the indemnitee's own negligence are not express and, therefore, not enforceable. Id.

By contrast, Texas courts have enforced indemnity agreements that state, in clear, express, and specific terms, the extent of the obligation to indemnify. In Atlantic Richfield, the Court considered an indemnity clause providing that the indemnitor would indemnify the indemnitee for "any negligent act or omission

20

of [the indemnitee], its officers, agents or employees. . . ." 768 S.W.2d at 726. The Texas Supreme Court held that this language met the requirements of the express negligence rule. Id. In Enserch Corp. v. Parker, 794 S.W.2d 2, 6-7 (Tex. 1990), the Court considered a clause providing that the indemnitor would indemnify for any claims "regardless of whether such claims are founded in whole or in part upon alleged negligence of [the indemnitee]" and that the indemnitor "further agrees to indemnify and hold harmless [the indemnitee] . . . in respect to such matters." The Court held that the contract defined the parties' intent to indemnify for the consequences of the indemnitee's own negligence. Id. at 8. In Maxus Exploration, Co. v. Moran Brothers, Inc., 817 S.W.2d 50, 56 (Tex. 1991), the court found that the following provision met the express negligence test: "Diamond Shamrock agree[s] to indemnify Moran against all bodily injury, death and property claims by its employees or the employees of its contractors 'without limit and without regard to the cause or causes thereof or the negligence of any party or parties, . . . .'" Id.; see also Permian Corp. v. Union Texas Petroleum Corp., 770 S.W.2d 928, 929-930 (Tex. App.-El Paso 1989, no writ)(clause providing "Contractor hereby indemnifies and agrees to protect, hold and save Union Texas . . . harmless from and against all claims, . . . including but not limited to injuries to employees of Contractor, . . . on account of, arising from or resulting, directly or indirectly, from the work and/or services performed by Contractor . . . and whether the

21

same is caused or contributed to by the negligence of Union Texas, its agent or employees, . . . " met the express negligence test).

At one end of the spectrum, general statements providing for indemnification for a type of activity from which losses or claims arise do not satisfy the express negligence doctrine. See, e.g., Fisk Elec., 888 S.W.2d at 814; Gulf Coast Masonry, 739 S.W.2d at 240; Ethyl, 725 S.W.2d at 708. Statements that require inference or extension to impose an indemnification obligation for the indemnitee's own negligence do not satisfy the express negligence doctrine. See, e.g., Singleton, 729 S.W.2d at 690; Houston Lighting & Power v. Atchison, Topeka, & Santa Fe Rwy. Co., 890 S.W.2d 455, 458 (Tex. 1994) (provision expressly providing indemnification for indemnitee's own negligence could not be inferentially extended to include indemnification for strict liability claims against indemnitee); see also Glendale Constr. Servs., Inc. v. Accurate Air Sys., Inc., 902 S.W.2d 536, 538-39 (Tex. App.–Houston [1st Dist.] 1995, writ denied) (indemnification clause applying to loss "regardless of whether it was caused in part by a party indemnified hereunder" does not expressly include loss from negligence); Lee Lewis Constr., Inc. v. Harrison, 64 S.W.3d 1, 20-22 (Tex. App.–Amarillo 1999), aff'd on other grounds, 70 S.W.3d 778 (Tex. 2001) (same). At the other end of the spectrum, indemnity provisions explicitly and affirmatively stating that the parties intend to provide indemnification for the indemnitee's own negligence provide fair notice under the express

22

negligence doctrine. See, e.g., Maxus Exploration, 817 S.W.2d at 56; Atlantic Richfield, 768 S.W.2d at 726; Enserch, 794 S.W.2d at 8.

Quorum essentially argues that the indemnity provisions in the Management Agreement place it at the enforceable end of the spectrum, allowing the district court to use general contract construction principles to view the contract as a whole and conclude that the indemnity clauses were sufficiently specific to give the Hospital fair notice of its obligation to indemnify Quorum for losses resulting from Quorum's own negligence. Quorum's argument fails under the Texas cases on which it relies.

Quorum first relies on the general statement in the "Indemnification by Hospital" provision, stating that the Hospital "agrees to indemnify and hold harmless Quorum . . . for any and all losses, claims, damages, liabilities, costs, and expenses . . . joint or several . . . arising in connection with the activity of the Hospital . . . ." Under clear Texas Supreme Court precedent, this language is insufficient to establish, in the required express terms, that the parties intended that the Hospital would indemnify Quorum for its own negligence. See, e.g., Ethyl, 725 S.W.2d at 708 ("any loss" arising as "a result of operations" does not convey intent to cover the indemnitee's own negligence).

Quorum argues that indemnity provision's definition of the losses, claims, and damages for which the Hospital must indemnify Quorum provides the necessary specificity. The

23

Management Agreement defines the losses, claims, and damages covered by the Hospital's indemnification obligation as "including, but not limited to . . . medical malpractice and other tort claims asserted against Quorum." Quorum argues that "medical malpractice or other tort claims asserted against Quorum" includes claims based on Quorum's own negligence. However, not all "losses, claims, damages, [or] liabilities" arising in connection with a medical malpractice or other tort claim asserted against Quorum are necessarily based on Quorum's own negligence. A statement that indemnification applies to certain types of claims does not extend the obligation to the indemnitee's own negligence, even if the types of claims specified could include claims based on the indemnitee's negligence. In Ethyl, for example, the contract provided indemnity for losses "as a result of the operations growing out of the performance of this contract." 725 S.W.2d at 707. Ethyl, the indemnitee, argued that this language was so broad that it covered all losses resulting from contract performance, including losses caused by Ethyl's own negligence. The Texas Supreme Court held that such a broad statement of indemnity did not meet the express negligence test. Id.; accord Gulf Coast Masonry, 739 S.W.2d at 239-40 (claims "arising out of or in any way connected with or attributable to" a list of specified items did not state with sufficient specificity the parties' intent to indemnify for the party's own negligent performance of the described items); DDD Energy, 60 S.W.3d at 883 ("all claims"

24

asserted "on account of . . . damage to property" insufficient to establish intent to indemnify for the indemnitee's own negligence that caused damage to property).

The language in the Management Agreement provision setting out the Hospital's obligation to indemnify Quorum does not expressly and specifically state that the Hospital must indemnify Quorum for losses, damages, liabilities, and costs of defense, arising in connection with medical malpractice or other tort claims asserted against Quorum and resulting from Quorum's negligence. The language in the provision does not satisfy the requirements of the express negligence rule.

Quorum also argues, and the district court concluded, that the language excluding losses or claims caused by Quorum's gross negligence from the Hospital's obligation to indemnify Quorum meant that the parties intended to include losses, damages, and claims caused by Quorum's simple negligence within the Hospital's indemnity obligation. Quorum cites "established principles" of contract construction and interpretation to support this result. However, the express negligence doctrine is a rule of contract construction that imposes requirements beyond the "established principles" of construction on which Quorum relies. See Dresser, 853 S.W.2d at 508. The express negligence rule requires an explicit statement of the parties' intention to require the Hospital to indemnify Quorum for the consequences of its own simple negligence. Ethyl, 725 S.W.2d at 707-08.

25

The Texas Supreme Court has held that an indemnity agreement that implies an obligation to indemnify for the indemnitee's own negligence as to one category or type of liability by excluding it for a different category or type of liability is not enforceable under the express negligence doctrine. The Texas Supreme Court held in Singleton, 729 S.W.2d at 691, and Atlantic Richfield, 768 S.W.2d at 725, that an agreement that implies an obligation to indemnify for the indemnitee's own negligence as to one degree or type of liability - concurrent negligence - by excluding it for a different degree or type of liability - sole negligence - is not enforceable under the express negligence doctrine. Under that holding, the language in the Management Agreement requiring deduction to determine what is included in the indemnity obligation – indemnity for Quorum's simple negligence – from the description of what is excluded – indemnity for Quorum's gross negligence – does not meet the "explicit" requirement of the Texas express negligence rule.

Texas cases decided since Singleton and Atlantic Richfield have reached similar results. In Texas Utils. Elec. Co. v. Babcock & Wilcox Co., Inc., 893 S.W.2d 739, 740 (Tex. App. – Texarkana 1995, no writ), Texas Utilities sought indemnification from Babcock & Wilcox for a claim that Texas Utilities had settled with a third party arising from the use of equipment sold by Babcock & Wilcox to Texas Utilities. Texas Utilities, the purchaser, asserted that it and Babcock & Wilcox, the seller, were

26

concurrently negligent in causing the injury that formed the basis of the claim. Id. The indemnity provision in the contract between the parties provided that

> [Seller] shall . . . indemnify . . . [Purchaser] . . . from and against any and all claims . . . of every kind and character whatsoever arising in favor of any person or entity . . . with the only exception being that . . . [Purchaser] shall not be entitled to indemnification for claims, demands, expenses, judgments, and causes of action resulting from [Purchaser's] sole negligence.

Id. at 741-42. The court held that, as in Singleton, the contract's exclusion of the purchaser/indemnitee's sole negligence from the indemnity obligation failed the express negligence test because it did not affirmatively state that the parties intended to include indemnity for concurrent negligence. Id. Similarly, in Houston Lighting & Power, 890 S.W.2d at 458, the Texas Supreme Court held that a contract provision expressly providing indemnification for the indemnitee's own negligence could not be extended by inference to require indemnification for the indemnitee's losses resulting from strict liability.

These results are consistent with Ethyl itself, the opinion in which the Texas Supreme Court adopted the express negligence test as the Texas rule. In Ethyl, the court first considered whether the contractor was required to indemnify the owner for the damages based on a broad provision providing indemnity for "losses as a result of the operations growing out of the performance of this contract." 725 S.W.2d at 707. The court

27

held that the indemnity obligation did not extend to the owner's own negligence. The indemnity provision also explicitly stated that the contractor would indemnify the owner for damages "caused by the negligence or carelessness of Contractor." Ethyl argued it was entitled to indemnification because the jury found the damages were proximately caused by both the owner and contractor. 725 S.W.2d at 707. The court held, however, that this provision, requiring indemnification for losses caused by the indemnitor's negligence, did not include indemnification for the concurrent negligence of both the indemnitee and indemnitor. The contract did not explicitly include concurrent negligence within the indemnity obligation and the court declined to find it by deduction or inference. Id.

These Texas cases make it clear that an indemnity provision excluding one degree or type of liability does not permit a Texas court to find that the parties implicitly intended to include indemnification for a different degree or type of liability. This result applies even if excluding the specified type or degree of liability appears, by deduction, to leave only the type or degree of liability for which indemnity is sought. Excluding sole negligence from an indemnity obligation would appear to leave concurrent negligence within the indemnity obligation, but the Texas Supreme Court in Singleton and Atlantic Richfield held that a contract cannot implicitly include an obligation to indemnify for the indemnitee's concurrent negligence by explicitly

28

excluding the obligation to indemnify for the indemnitee's sole negligence. Singleton, 729 S.W.2d at 691; Atlantic Richfield, 768 S.W.2d at 725.

A provision excluding the indemnitee's gross negligence from the losses, damages, or claims covered by the indemnity obligation appears, by deduction, to leave the indemnitee's simple negligence within the indemnity obligation. However, just as a provision explicitly excluding indemnification for the indemnitee's sole negligence is insufficient to establish inclusion of indemnification for the indemnitee's concurrent negligence, so the provision in the Management Agreement explicitly excluding Quorum's gross negligence from the Hospital's indemnification obligation is insufficient to require the Hospital to indemnify Quorum for Quorum's simple negligence. The indemnity provision's exclusion of losses, damages, and claims caused by Quorum's gross negligence from the Hospital's indemnity obligation does not explicitly state that the Hospital is obligated to indemnify Quorum for losses, damages, or claims caused by Quorum's simple negligence. Rather, the exclusion of gross negligence creates an implicit agreement to indemnify for simple negligence, requiring the Hospital to deduce its full obligation from the gross negligence exception. An implicit indemnity agreement does not pass the Texas express negligence test. Singleton, 729 S.W.2d at 691; Atlantic Richfield, 768 S.W.2d at 725; Houston Lighting & Power, 890 S.W.2d at 458.

29

Quorum cites Fina, Inc. v. ARCO, 200 F.3d 266 (5th Cir. 2000), to support its argument that the indemnity provision is sufficient to meet the express negligence test. In Fina, the court held that an indemnity provision excluding claims caused by the indemnitee's "gross negligence" did not expressly state the parties' intent to indemnity against strict liability claims. In reaching this conclusion, the court in Fina stated: "Even if the exclusion of gross negligence from the indemnity's coverage is interpreted as indicating that [the indemnitor] intended to indemnify [the indemnitee] for ordinary negligence,[] claims based on strict liability are of quite a different nature." 200 F.3d at 273 (citing Rizzo v. John E. Healy and Sons, Inc., 1990 WL 18378, at *2 (Del. Super. Feb.16, 1990); Laws v. Ayre Leasing, 1995 WL 465334, at *2 (Del. Super. July 31, 1995)). Quorum argues that this sentence permits a court to find that a contract excluding gross negligence from indemnification shows the parties' intent to include simple negligence.

Fina involved contracts governed by both Texas and Delaware law. Although the court made the statement Quorum cites in analyzing whether the indemnity provision was enforceable under Texas law, the only authorities the court cited in support are unpublished Delaware cases. Delaware follows the more permissive "clear and unequivocal" test. As the court in Fina noted, when the Texas Supreme Court adopted the express negligence standard, it rejected the "clear and unequivocal" test. In Fina, the court

30

concluded that under Texas law, an indemnity provision expressly excluding gross negligence claims could not be enforced as applied to a strict liability claim. The *dicta* in <u>Fina</u> does not make the indemnification provision at issue here enforceable.

Quorum also relies on <u>Banzhaf v. ADT Sec. Sys. Southwest, Inc.</u>, 28 S.W.3d 180, 189 (Tex. App. – Eastland 2000, pet. denied), involving an indemnity provision in a security alarm installation contract. The contract provided that the store would indemnify the alarm company, ADT, for claims against ADT "for failure of its equipment or service in any respect." <u>Id.</u> The court stated that the provision met the express negligence rule and required indemnification of ADT for claims based on "failure of [ADT's] equipment or service in any respect." <u>Id.</u> <u>Banzhaf</u> does not lead to the conclusion that the Hospital must indemnify Quorum for its sole negligence under the Management Agreement. In <u>Banzhaf</u>, another section of the indemnity provision made it clear that the parties intended to indemnify ADT "if loss, damage or injury" resulted from "performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of ADT, its agents or employees," a statement which clearly did satisfy the express negligence rule. <u>Id</u>. at 189-90.

The <u>Banzhaf</u> court cited <u>Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys.</u>, 997 S.W.2d 803, 814 (Tex. App. – Dallas 1999, no pet.), in support of its statement that a contract does not have to

31

include the word "negligence" to satisfy the express negligence doctrine. Arthur's Garage does not support this statement because the indemnity clause in that case did include the word "negligence." In Arthur's Garage, the indemnity clause in the alarm installation contract provided that the purchaser would indemnify the seller for claims brought by third parties

> regardless of cause, including [seller's] performance or failure to perform, and including defects in products, design, installation, maintenance, operation or non-operation of the system, whether based upon negligence, active or passive, warranty, or strict product liability on the part of [seller], its employees or agents . . . .

Id. at 815. The court concluded that because "this provision clearly and specifically provides that it covers any negligence . . . on the part of the [security alarm seller and installer]," it met the express negligence test. Id.[8]

In contrast to Banzhaf, other Texas courts of appeals have held that an indemnity provision must specifically refer to the indemnitee's own negligence to meet the express negligence test. In Monsanto Co. v. Owens-Corning Fiberglass, 764 S.W.2d 293, 295 (Tex. App. - Houston [1st Dist.] 1988, no writ), the Houston

---

[8] The Texas Supreme Court denied the petition for review of the Banzhaf decision with the notation "petition denied," indicating that "[t]he supreme court is not satisfied that the opinion of the court of appeals has correctly declared the law in all respects, but determines that the petition presents no error that requires reversal or that is of such importance to the jurisprudence of the state as to require correction." TEXAS RULES OF FORM 88 (9th ed. 1998).

Court of Appeals held that the contract did not meet the express negligence test, in part because the agreement did not use the word "negligence." In <u>Lee Lewis Constr.</u>, 64 S.W.3d at 21 n.13, the court interpreted <u>Ethyl</u> and its progeny as explicitly requiring the parties to use the word "negligence" in stating the indemnitor's obligation to indemnify the indemnitee for the indemnitee's own negligence.

In the cases in which the Texas Supreme Court has allowed indemnification of a party for its own negligence, the contracts contained language that expressly referred to the type of the indemnified party's negligence covered by the indemnity obligation. <u>Atlantic Richfield</u>, 768 S.W.2d 724; <u>Enserch</u>, 794 S.W.2d 2; <u>Maxus Exploration</u>, 817 S.W.2d at 56; <u>Payne & Keller, Inc. v. P.P.G. Indus., Inc.</u>, 793 S.W.2d 956, 957-59 (Tex. 1990) (indemnitor owed indemnification for indemnitee's concurrent negligence where indemnity provision covered claims "arising out of . . . the acts or omissions . . . of [indemnitor] . . . in the performance of the work . . . irrespective of whether [indemnitee] was concurrently negligent . . . but excepting [claims] caused by the sole negligence of [indemnitee]"). In contrast, Texas courts do not allow indemnification of a party for its own negligence when the contract did not expressly identify the precise category of liability for which indemnification was sought. <u>Ethyl</u>, 725 S.W.2d at 708 (no indemnification for concurrent negligence when sole negligence of indemnitor included); <u>Singleton</u>, 729 S.W.2d at 691

33

(no indemnification for concurrent negligence when sole negligence of indemnitee excluded); Texas Utils., 893 S.W.2d at 741 (same); see also Houston Lighting & Power, 890 S.W.2d at 458 (no indemnification for strict liability when negligence of indemnitee included); Fina, 200 F.3d at 273 (no indemnification for strict liability when gross negligence of indemnitee excluded). The exclusion of coverage for Quorum's gross negligence falls into the second category because it fails expressly to state the parties' intent to require the Hospital to indemnify Quorum for losses, claims or damages resulting from Quorum's simple negligence.

The Management Agreement provision requiring the Hospital to indemnify Quorum fails to satisfy the fair notice requirements of the express negligence rule. As a matter of law, the provision is not enforceable against the Hospital for claims based on Quorum's own negligence. Quorum is not entitled to indemnification from the Hospital for the Rodriquez judgment.

## B. The Insurer's Duty to Defend and Indemnify

Texas law is clear that insurance policies are subject to the same rules of construction generally applicable to contracts. Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998)(citations omitted). If one party to an agreement commits a material breach, the other party is discharged or excused from any otherwise binding obligation to perform. See Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 693 (Tex. 1994); Mead v. Johnson

34

<u>Group, Inc.</u>, 615 S.W.2d 685, 689 (Tex. 1981). An insurer's duty to defend and its duty to indemnify are distinct and separate. <u>Farmers Tex. County Mut. Ins. v. Griffin</u>, 955 S.W.2d 81, 82 (Tex. 1997); <u>E&L Chipping Co. v. Hanover Ins. Co.</u>, 962 S.W.2d 272, 274 (Tex. App. – Beaumont 1998, no pet.); <u>Argonaut Southwest Ins. Co. v. Maupin</u>, 500 S.W.2d 633, 636 (Tex. 1973). The duty to defend is based upon the factual allegations in the pleadings and the policy language itself. <u>See</u> <u>American Nat. Gen. Ins. Co. v. Ryan</u>, 274 F.3d 319 (5th Cir. 2001); <u>American Physicians Ins. Exch. v. Garcia</u>, 876 S.W.2d 842, 847-48 (Tex. 1994). The duty to indemnify arises from the actual facts that are developed to establish liability in the underlying suit. <u>See</u> <u>Trinity Univ. Ins. Co. v.</u> Cowan, 945 S.W.2d 819, 821 (Tex. 1997) (citing <u>Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.</u>, 387 S.W.2d 22, 25 (Tex. 1965)). An insurer may have a duty to defend but, eventually, not to indemnify. <u>Griffin</u>, 955 S.W.2d at 82.

An insured has a duty to cooperate with its insurer in the defense of claims for which the insurer has a duty to defend. <u>See</u> <u>State Farm & Cas. Co. v. S.S.</u>, 858 S.W.2d 374, 385 (Tex. 1993). These "[c]ooperation clauses are intended to guarantee to insurers the right to prepare adequately their defense on questions of substantive liability." <u>Martin v. Travelers Indem. Co.</u>, 450 F.2d 542, 553 (5th Cir. 1971). To breach its duty to cooperate, an insured's conduct must materially prejudice the insurer's ability to defense the lawsuit on the insured's behalf. <u>Id.</u> at 553;

35

Hernandez, 875 S.W.2d at 692-93; State Farm, 858 S.W.2d at 385; Oil Ass'n v. Royal Indem. Co., 519 S.W.2d 148, 150 (Tex. App.– Houston [14th Dist.] 1975, writ ref'd n.r.e.). However, an insurer who first "wrongfully refuses to defend" an insured is precluded from insisting on the insured's compliance with other policy conditions. See Employers Cas. Co. v. Block, 744 S.W.2d 940, 943 (Tex. 1988); St. Paul Ins. Co. v. Rahn, 641 S.W.2d 276, 278 (Tex. App. - Corpus Christi 1982, no writ); Enserch v. Shand Morahan & Co., Inc., 952 F.2d 1485, 1496 n.17 (5th Cir. 1992) (applying Texas law). Even if an insurer wrongfully refuses to defend, it still has the right to assert the policy defense of noncoverage and will only be liable to indemnify the insured up to the policy limits. Western Alliance Ins. Co. v. Northern Ins. Co. of New York, 176 F.3d 825, 830 (5th Cir. 1999); Rhodes v. Chicago Ins. Co., 719 F.2d 116, 120 (5th Cir. 1983); Willcox v. American Home Assur. Co., 900 F. Supp. 850, 855-57 (N.D. Tex. 1995) (citing Ideal Mutual Ins. Co. v. Myers, 789 F.2d 1196, 1200 (5th Cir. 1986)); Texas United Ins. Co. v. Burt Ford Enterp., 703 S.W.2d 828, 834 (Tex. App.– Tyler 1986, no writ).

THIE concedes that, under the insurance policy, it had a duty to defend Quorum in the Rodriquez litigation. The parties do not dispute that, once Quorum was joined as a defendant in the Rodriquez litigation, THIE fulfilled its duty to defend Quorum by assigning a lawyer to handle its defense. The issue is whether THIE met its duty to defend after Quorum sought separate counsel on the basis of a conflict of interest, or whether Quorum breached its

36

duty to cooperate by rejecting the lawyer THIE offered and insisting upon separate counsel.

The summary judgment evidence consisted of various letters exchanged among the parties and their representatives, as well as affidavits from the parties and their representatives. The parties disputed the meaning and significance of the letters exchanged between the parties and the events described in the affidavits. This court must view facts and inferences in the light most favorable to Quorum, the party opposing summary judgment. See Liberty Lobby, 477 U.S. at 248; Matsushita, 475 U.S. at 587-88.

When Quorum was added as a party defendant to the Rodriquez litigation, THIE assigned a lawyer to defend Quorum and advised Quorum in writing of the policy limits of $100,000 per occurrence and the policy exclusion for punitive damages. THIE advised Quorum of its "right to consult with additional counsel, at its own expense, to protect any uninsured interests." In February 1998, Quorum told the attorney assigned by THIE that Quorum's excess insurer, American Continental Insurance Company ("ACIC"), wished to play a "more active role in the case." ACIC appointed a lawyer "to work with [the THIE lawyer] on the case, especially to assist in monitoring Quorum's and ACIC's interests." A February 25, 1998 letter from ACIC to Quorum clarifies the role Quorum expected the ACIC lawyer to take: "[He] shall be considered 'co-counsel' to oversee and work with [the THIE lawyer] to protect Quorum and ACIC's interests. By copy of this letter to [the

37

lawyers], we look forward to their assistance in coordinating this team."  Quorum did not ask THIE to pay for this "co-counsel."  In late March or early April 1998, the ACIC lawyer arranged to visit the offices of the THIE lawyer to review the claim file.

On April 13, 1998, Quorum told THIE, in writing, that a conflict of interest had arisen in the "co-counsel" arrangement and that Quorum had retained the lawyer previously provided by ACIC to represent its interests.  Quorum demanded that THIE pay for this lawyer as part of Quorum's cost of defense.  "[I]t is expected that Texas Hospital Insurance Exchange will pay for the defense of this matter for those additional insurance [sic], Quorum Health Resources, Inc. and Quorum Health Group, Inc., through their new counsel, [the ACIC lawyers]."  On April 16, 1998, THIE responded to Quorum's letter, stating that while THIE was "willing to provide Quorum Health Care with separate legal representation," the law firm retained by Quorum was not on THIE's list of approved counsel. THIE would "not be responsible for payment of any services provided by the firm."

On April 17, 1998, THIE assigned a lawyer from its approved list to represent Quorum in the Rodriquez litigation and notified Quorum of this assignment.  Shortly after that date, Sally Stewart of THIE had a telephone conference with Ann Peck of ACIC and Elizabeth Berryman of Quorum.  Stewart stated in her affidavit that in this conversation, Peck or Berryman told her that "[the ACIC lawyer] would be representing Quorum in this litigation

38

regardless of who paid for the defense costs, and I was also informed that the issue of defense costs would simply have to be resolved later."

On April 21, 1998, the ACIC lawyer asked the THIE lawyer to provide copies of the Rodriquez case files.  In the letter, the ACIC lawyer stated,

> We need to make sure that these files are copied as soon as possible as the clients have requested that we enter an appearance on behalf of Quorum and begin defending their interest.  Regardless of whether THIE steps into this case and pays for the defense costs, Quorum and American Continental Insurance have asked that we provide services to them regarding the defense of this particular matter as it relates to Quorum.

The THIE lawyer responded that THIE had that day "authorized the copying of the file for you [the ACIC lawyer's] and Quorum's new [THIE] attorney . . . ."  Neither Quorum nor its counsel objected to copying the case file for the "new THIE attorney."  On that same day, however, Stewart acknowledged that the new lawyer THIE had assigned to the defense of Quorum in the Rodriquez case had "declined the assignment."

On April 28, 1998, THIE asked ACIC to send a firm resume and fee billing schedule for the ACIC lawyers representing Quorum's interests. The record does not reveal that THIE received a response or took further action.   THIE did not offer further representation to Quorum.  On May 13, 1998, the Rodriquez court allowed the ACIC lawyer to substitute in as counsel for Quorum.

39

Quorum proceeded to trial represented by this lawyer, as well as two additional law firms. The trial transcripts reveal that the two additional law firms played the major role at trial. The parties have presented conflicting affidavits as to the representation Quorum's lawyers provided during the trial. The lawyers who tried the case explained the circumstances that made it challenging; the preparation and expertise they brought to the trial; and the absence of any prejudice to THIE as a result of their actions and decisions in defending Quorum. The lawyer who was initially hired by THIE to represent Quorum, but whose involvement ended after April 1998, criticized the trial strategy that Quorum followed.

Quorum and THIE dispute the conclusions and inferences that can be drawn from the summary judgment evidence. Quorum asserts that because the lawyer THIE provided after Quorum asserted a conflict of interest almost immediately declined the representation, and THIE did not offer a replacement, the record does not permit the conclusion that THIE met its duty to defend, as a matter of law. THIE argues that the evidence shows that Quorum unreasonably rejected the second lawyer THIE offered and took over the defense, leading to the conclusions that THIE met its duty to defend and that Quorum breached its duty to cooperate. As a result, THIE contends that it is relieved of any duty to indemnify Quorum for any part of the Rodriguez judgment. Quorum responds that the evidence is insufficient to establish that Quorum rejected

THIE's offer of a lawyer or breached its duty to cooperate under the policy. Quorum asserts that the evidence can reasonably be interpreted as showing that Quorum wanted to retain the ACIC lawyer in addition to the counsel THIE would provide, regardless of whether THIE paid for all such costs of defense. Quorum points to the absence of any evidence that it directly rejected THIE's offer of a lawyer and a defense.

The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. See id. The evidence in the present record shows that until April 13, 1998, Quorum was represented by a lawyer THIE assigned and for which it paid, and by a lawyer ACIC assigned and for which it paid. When Quorum notified THIE of the conflict of interest, Quorum told THIE that it expected THIE to continue to pay for Quorum's defense. THIE responded that it was willing to provide Quorum with separate legal representation, but could not approve the law firm Quorum had retained and would not pay for its services. THIE asserts that Quorum made it clear that it would reject any lawyer THIE provided; Quorum denies that it conveyed such a position, pointing out that although THIE provided another lawyer, that lawyer almost immediately declined the representation and THIE did not provide other counsel.

41

The evidence does not support the conclusion that, as a matter of law, THIE met its duty to defend Quorum after the conflict of interest arose. Nor does the evidence support the conclusion that, as a matter of law, Quorum breached its duty of cooperation after THIE's second lawyer declined the representation. Quorum points to summary judgment evidence showing that it did not decline to accept the lawyer offered. Quorum also points to summary judgment evidence showing that after THIE's involvement in the defense ceased, Quorum's lawyers mounted a vigorous defense, raising a fact issue as to whether THIE suffered prejudice, a necessary component of a breach of the duty to cooperate. Hernandez, 875 S.W.2d at 692-94.; State Farm, 858 S.W.2d at 385; Oil Ass'n, 519 S.W.2d at 150.

In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255. The fact issues disclosed in the present record are genuine in that the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party, and are material, in that resolution of the issues might affect the outcome of the suit under governing law. Merritt-Campbell, 164 F.3d at 961. The summary judgment record is insufficient to demonstrate the absence of a genuine issue of material fact as to whether THIE met its obligation to defend Quorum after the second THIE lawyer declined the

42

representation. The record is also insufficient to permit the conclusion that, as a matter of law, Quorum breached its duty of cooperation by rejecting THIE's proffered representation, depriving THIE of its ability to control Quorum's defense. The evidence is conflicting as to whether Quorum told THIE that it would reject any lawyer THIE offered, but would insist on representation solely by counsel ACIC provided. The evidence is conflicting as to whether THIE met its obligation to provide a lawyer after the counsel it did offer declined to proceed. The evidence is conflicting and insufficient to support the conclusion that, as a matter of law, Quorum breached its duty of cooperation once THIE's involvement in the defense ceased. The district court's grant of summary judgment is reversed and the case remanded for further proceedings on these issues.

## IV. Conclusion

This court holds that, as a matter of law, the Hospital does not have a duty to indemnify Quorum for the <u>Rodriquez</u> verdict because the contractual indemnity provision did not expressly state the parties' intention to indemnify Quorum for its own negligence. The district court's summary judgment ruling that the Hospital is obligated to indemnify Quorum is REVERSED. This court concludes that the evidence does not support summary disposition of THIE's satisfaction of its duty to defend and Quorum's satisfaction of its

43

duty to cooperate.  As to these issues, this court REVERSES and REMANDS to the district court.