**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 15-10552

United States Court of Appeals
Fifth Circuit

**FILED**

January 19, 2017

Lyle W. Cayce
Clerk

SAFEWAY, INCORPORATED,

     Plaintiff–Appellant,

v.

PDX, INCORPORATED; AXIS SURPLUS INSURANCE COMPANY,

     Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-683

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:*

Safeway filed this action in the Northern District of Texas, seeking a declaratory judgment that it is not obligated to indemnify PDX for claims asserted in an underlying lawsuit in California state court. After the parties filed cross-motions for summary judgment, the district court denied Safeway's motion, granted PDX's motion, and awarded PDX attorneys' fees under a fee-shifting provision in the contract between the parties. Because PDX's claims

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10552

for indemnity from Safeway are unenforceable under Texas law, we reverse and remand for consideration of Safeway's claims for fees and costs under the contract as a prevailing party.

**I**

PDX, Inc. (PDX) is a developer and licensor of software. One of its programs is the PDX Pharmacy System, which assists pharmacies in filling prescriptions. Safeway, Inc. (Safeway) was a customer of PDX and licensed the PDX Pharmacy System during the relevant time period.

Among other things, the PDX Pharmacy System enables pharmacists to print information to distribute to patients with their medications, including "patient education monographs." Patient education monographs provide drug information from databases unaffiliated with PDX to patients in concise, non-technical language. They are neither required by law nor regulated by the FDA. Prior to 2006, the default setting on the PDX Pharmacy System printed monographs with five paragraphs of information, but enabled pharmacists to print monographs with three additional paragraphs titled "Overdose," "Before Using," and "Additional Information."

In 1996, Congress passed a law directing the Secretary of Health and Human Services to collaborate with members of the healthcare community to develop a plan for achieving certain goals relating to the dissemination of medical information. That group developed an "Action Plan for the Provision of Useful Prescription Medicine Information" containing recommendations, referred to as the "Keystone Criteria," for members of the pharmaceutical industry. The Keystone Criteria recommend information that pharmacists should provide patients along with their medications and the manner in which such information should be presented. They are not binding.

In response to the Keystone Criteria, PDX modified its Pharmacy System to remove the option of printing five-paragraph monographs, such that

2

No. 15-10552

all monographs printed from the software would contain eight paragraphs, including the additional three noted above.  After PDX notified its customers of the modification, Safeway requested that PDX provide a customized version that reversed the modification and allowed Safeway to continue to print five-paragraph monographs.

In a contract titled the Keystone Indemnity Agreement (the Agreement), PDX agreed to provide Safeway with a customized version of the software as requested (the Program).  In the Agreement, Safeway agreed to indemnify PDX as follows:

> [Safeway] hereby expressly waives any claims against PDX with respect to such Program and the use of such and further agrees to indemnify and hold PDX harmless from any and all loss, damage, or expense (or claims of damage or liability) asserted against PDX arising from [Safeway's] use of the Program, including, without limitation, claims that the Program or the purpose for which this Program is used by [Safeway] constitutes a violation of [the statute directing the HHS Secretary to develop the Keystone Criteria].

Four days after PDX and Safeway executed the Agreement, PDX uploaded the Program to a server, and Safeway immediately downloaded it.  Safeway then installed the Program on its servers.

Almost five years later, Kathleen and Dane Hardin (the Hardins) brought suit in California state court against Safeway and several other parties based on injuries Kathleen Hardin sustained after using a prescription drug she purchased from Safeway (the *Hardin* Litigation).  The Hardins' original complaint alleged, *inter alia*, that Safeway was negligent by failing to provide information sufficient to warn her of certain risks posed by the drug.  In 2012, they amended their complaint to add PDX as a defendant, asserting against it claims for negligence and strict product liability based on PDX's

3

No. 15-10552

provision of the Program to Safeway. Safeway was later dismissed from the *Hardin* Litigation under a statute of limitations defense.[1]

Thereafter, PDX sought indemnification from Safeway for the *Hardin* Litigation based on the indemnity provision of the Agreement, and Safeway refused to provide indemnification. PDX then sought coverage from its surplus insurance provider, Axis Surplus Insurance Company, which has provided a defense in the *Hardin* Litigation. Safeway brought suit in the Northern District of Texas seeking a declaratory judgment that it owed PDX no indemnification because the Agreement does not specifically reference negligence or strict liability as required under Texas law to indemnify a party for its own negligence or strict liability. PDX counterclaimed, seeking indemnification.

After the parties filed cross-motions for summary judgment, the district court denied Safeway's motion, granted PDX's motion, and entered judgment in favor of PDX. The court also awarded attorneys' fees to PDX under the Agreement's fee-shifting provision. Safeway timely appealed.

## II

The court reviews "a grant of summary judgment *de novo*, applying the same standards as the district court."[2] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

## III

The district court entered summary judgment in PDX's favor after holding that the Agreement satisfies the express negligence test. That test,

---

[1] *See Safeway, Inc. v. Superior Court*, No. A141505, 2014 WL 2772306, at *8 (Cal. Ct. App. June 19, 2014), *review denied* (Sept. 10, 2014).

[2] *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014) (quoting *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 (5th Cir. 2009)).

[3] FED. R. CIV. P. 56(a).

4

first adopted by the Supreme Court of Texas in *Ethyl Corp. v. Daniel Construction Co.*,[4] is a rule of contract interpretation dictating that "contracting parties seeking to indemnify one party from the consequences of its own negligence must express that intent in specific terms, within the four corners of the document."[5] Contracts that fail the express negligence test are unenforceable as a matter of law with respect to claims for indemnification of such negligence.[6] The rule applies with full force when a party seeks indemnification after its own negligence "causes injury jointly and concurrently with the indemnitor's negligence."[7] Texas courts have expanded the rule to apply to strict liability as well.[8]

Safeway argues that the district court erred in concluding that the Agreement satisfies the express negligence rule. In contrast, PDX argues both that the district court's determination was correct and that this court can affirm on alternative grounds raised, but not considered, below: that the express negligence rule does not apply at all to the Agreement and that, even if it does and is not satisfied by the Agreement's text, Safeway's knowledge of its obligations suffices.

## A

We have previously stressed that "broad statements of indemnity" are insufficient to satisfy the express negligence rule.[9] In fact, Texas courts have held insufficient even clauses that provide indemnification "from and against all claims, damages, losses, and expenses" "[t]o the fullest extent permitted by

---

[4] 725 S.W.2d 705, 707-08 (Tex. 1987).

[5] *Quorum Health Res., L.L.C. v. Maverick Cty. Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002) (citing *Ethyl*, 725 S.W.2d at 707-08).

[6] *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).

[7] *Ethyl*, 725 S.W.2d at 708.

[8] *See Hous. Lighting & Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 890 S.W.2d 455, 457-59 (Tex. 1994).

[9] *Quorum*, 308 F.3d at 461.

law."[10] Moreover, where the intent to indemnify a party for its own negligence can be gleaned from a contract only by implication or deduction, the agreement is not enforceable.[11]

For example, in *Singleton v. Crown Central Petroleum Corp.*, the contract at issue required a contractor to indemnify a premises owner

> from and against any and all claims . . . of every kind and character whatsoever, . . . for or in connection with loss of life or personal injury . . . directly or indirectly arising out of . . . the activities of Contractor . . . *excepting only* claims arising out of accidents resulting from the *sole* negligence of Owner.[12]

Although the provision broadly indemnified the owner and excluded only the owner's *sole* negligence, implicitly requiring indemnification when the owner was not exclusively at fault—defining what was included "by stating what [wa]s excluded"[13]—the Supreme Court of Texas held that the agreement did not satisfy the express negligence test.[14] As that court later clarified, the provision failed because it was merely an "implicit indemnity agreement requiring [the owner] to deduce his full obligation"—not an express agreement.[15]

Similarly, in *Quorum Health Resources, L.L.C. v. Maverick County Hospital District*, this court confronted a provision indemnifying a party "from and against any and all losses, claims, damages, liabilities, costs and

---

[10] *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994); *accord Tex. Utils. Elec. Co. v. Babcock & Wilcox Co.*, 893 S.W.2d 739, 741-42 (Tex. App.—Texarkana 1995, no writ) (holding that a provision that indemnified a party "from and against any and all claims of every kind and character whatsoever . . . with the only exception being . . . causes of action resulting from [indemnitee's] sole negligence" did not indemnify the indemnitee from a claim asserting that the indemnitee and indemnitor were concurrently negligent).

[11] *Quorum*, 308 F.3d at 462.

[12] 713 S.W.2d 115, 117-18 (Tex. App.—Houston [1st Dist.] 1985), *rev'd*, 729 S.W.2d 690 (Tex. 1987) (emphasis added).

[13] *Quorum*, 308 F.3d at 461.

[14] *Singleton*, 729 S.W.2d at 691.

[15] *Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 725 (Tex. 1989).

expenses," specifically excluding the indemnitee's gross negligence or willful misconduct.[16]    By carving out the indemnitee's own gross negligence, the provision arguably implied that the indemnitee's simple negligence would be covered.    The clause also explicitly referenced "medical malpractice or other tort claims" asserted against the indemnitee, and the underlying claim was for medical malpractice.[17]    Nevertheless, after observing the strictness with which Texas courts apply the express negligence test, we held that the provision was insufficient because it did not specifically and explicitly refer to the indemnitee's own negligence.[18]

Likewise here, we conclude that the four corners of the Agreement do not express, in specific terms, an intent to indemnify PDX for its own negligence. As noted above, the provision here requires Safeway to "indemnify and hold PDX harmless from any and all loss, damage, or expense (or claims of damage or liability) . . . arising from [Safeway's] use of the Program," including claims that the Program's use constitutes a violation of the statute underlying the Keystone Criteria.    This provision is comparable to those that have failed the express negligence test in other cases.    In fact, the Agreement appears no more clearly to include the indemnitee's negligence than the provision at issue in *Quorum*.    If anything, *Quorum* appears to be a closer case than this one given the breadth of the clause at issue there (appearing to imply simple negligence by carving out gross negligence, and referencing the very cause of action at issue) as compared to the one here.

Nor can the Agreement's recitals and other provisions bear the weight PDX asks of them.    Contrary to PDX's assertions, those provisions do not demonstrate that the *Hardin* Litigation "is the *precise* scenario contemplated

---

[16] 308 F.3d at 456.

[17] *Id*. at 454, 456.

[18] *Id*. at 467-68.

by" the Agreement, such that *if* providing the Program constitutes negligence or strict liability "then the . . . Agreement expressly and unambiguously manifests the parties' intent that Safeway would indemnify PDX" for those torts. Moreover, this argument would require the court to conclude that the indemnity obligation covers PDX's negligence by implication, which is impermissible under the express negligence test.

More generally, PDX has offered no support for its argument that the express negligence test is satisfied simply because PDX "perform[ed] a single, identifiable act, with a known outcome[,] . . . which gives the indemnitor the capability to perform a single act precisely in the manner that the indemnitor requested." PDX effectively asks this court to create an exception to the generally strict express negligence rule for such circumstances, but it has not offered any legal support for doing so.

In concluding that the Agreement satisfies the express negligence test, the district court placed great weight on the reasoning that absent indemnification for negligence, the indemnity clause would be meaningless. But this is exactly the type of obligation by implication that Texas courts hold to be insufficient under the express negligence test. In *Quorum*, we noted that the test is not satisfied "even if excluding [a certain] type or degree of liability appears, by deduction, to leave *only* the type or degree of liability for which indemnity is sought."[19] In other words, that a provision may be meaningless is immaterial; to satisfy the test, a provision must expressly state, without requiring inference, that it covers the indemnitee's negligence.

In any event, the district court's conclusion in this respect was factually problematic as well. The provision of the Agreement at issue specifically references indemnification for claims that the program "constitutes a violation"

---

[19] *Id.* at 465 (emphasis added).

of the statute underlying the Keystone Criteria. Based on this language, Safeway argues that the risk indemnified by the Agreement was "that the software modifications requested by Safeway might expose PDX to federal statutory or regulatory claims—not state law negligence or strict liability claims" of the type asserted by the Hardins. PDX asserts that this position is disingenuous, because (1) at the time the Agreement was consummated (and still today), the Keystone Criteria were voluntary and (2) PDX as software vendor rather than Safeway as pharmacy would likely never face liability even if they were to become mandatory. But a contract might account for risks not yet present, like the possibility that the Keystone Criteria may become mandatory. Additionally, the mere fact that Safeway would be the most logical defendant in any potential suit or regulatory action for a violation of the Keystone Criteria does not mean that PDX could not face consequences for such a violation, meritorious or not.

To be sure, PDX's assertion that the "constitutes a violation" language of the provision actually reflected the parties' concerns that the new law "created a common-law standard by which courts might measure the Monographs produced by Safeway's use of the Program" is plausible. But in light of the fact that the Agreement contemplates indemnification if the Program's use amounts to a *violation* of the law, the clause can also be fairly read to cover federal statutory and regulatory claims PDX might face, as Safeway argues. In applying the express negligence test, we need not attempt to discern the specific intent of the parties or the true meaning of the contract. Rather, unless the four corners of a contract expressly evince an intent to cover the indemnitee's negligence, that contract fails the express negligence test. The fact that Safeway has offered an interpretation of the provision that is a reasonable alternative to that urged by PDX demonstrates that the provision may fairly cover more than the district court concluded it does and is, at the

very least, ambiguous. Thus, even if indemnification for PDX's negligence would implicitly be required were the indemnity clause meaningless without it—which seems doubtful after *Quorum*—the fact that the Agreement may *or may not* be meaningless without so indemnifying PDX establishes that it fails the express negligence test.

Finally, Safeway did not waive the opportunity to assert that the indemnity clause covers more than just PDX's own negligence and strict liability by failing to argue this point below, as PDX argues. Because PDX did not raise this issue in the district court in any meaningful sense, Safeway had no reason to proactively respond to it. Rather, Safeway's insistence in this court that the provision has meaning beyond indemnifying PDX for its own negligence was motivated by the district court's holding to the contrary. The district court's "meaningless" rationale was its own invention; the onus was not on Safeway to rebut in the district court a point that PDX did not make.

Accordingly, we conclude that the Agreement fails the express negligence test and that the district court's holding otherwise was erroneous.

**B**

PDX alternatively argues that the express negligence rule does not apply to this case at all, a question the district court did not reach. PDX argues the rule does not apply both because the Hardins' claims against PDX "are not based on PDX's negligence or strict liability" and because the provision here gives indemnification for PDX's past or contemporaneous acts, not future ones.

With respect to the contention that the Hardins' claims are not actually based on PDX's alleged negligence or strict liability despite their labels, PDX argues that because it performed as expected under the contract, and because it also provided Safeway with the code necessary to revert back to eight-paragraph monographs, Safeway's decision to use five-paragraph monographs is the sole reason for any potential liability. On this basis, PDX contends that

its conduct was not negligent or strictly liable, so the rule does not apply. But the Hardins have undoubtedly asserted those two causes of action against PDX, and PDX does not contest that the Hardins' complaint alleges direct, rather than vicarious, liability. In other words, the underlying complaint specifically targets PDX's conduct in developing and providing the Program, not Safeway's conduct in using it. Critically, application of the express negligence rule turns not on whether the indemnitee is ultimately found liable but is instead "established as a matter of law from the pleadings."[20] Thus, the fact that PDX does not believe its conduct was culpable in a manner cognizable under negligence or strict liability causes of action is of no moment. The Hardins brought claims for negligence and strict liability, so the express negligence rule is implicated regardless of the outcome of those claims.

PDX also argues that the express negligence rule does not apply here because PDX's alleged conduct occurred contemporaneously with the parties' execution of the Agreement, rather than after it. Texas courts have limited the applicability of the express negligence rule to agreements to indemnify or release a party for its future negligence; where an agreement relates to past negligence, ordinary principles of contract interpretation apply.[21] Here, however, even leaving aside the timing of both the sale of medication to Kathleen Hardin and her injury, there is no dispute that PDX's provision of the Program to Safeway occurred after the Agreement's execution: Safeway signed the Agreement on November 29, 2006, PDX signed it the following day,

---

[20] *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 815 (Tex. 1994); *see also DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 882-84 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that "application of the express negligence rule [wa]s proper" because the underlying complaint alleged a negligence cause of action against the indemnitee).

[21] *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 386-87 (Tex. 1997) (noting that a previous decision construing the express negligence rule "is explicitly limited to releases and indemnity clauses in which one party exculpates itself from its own future negligence.").

No. 15-10552

and PDX uploaded the Program for Safeway to download on December 4, 2006. Indeed, the contract specifically states that PDX was "in the position" to modify the software for Safeway and that it would provide such modification "[u]pon execution of th[e] Agreement . . . in a commercially reasonable amount of time." PDX's broad definition of "contemporaneous," with no relevant legal authority, does not undermine the fact that that the Agreement indemnified PDX for future conduct as of the time of its execution.

Thus, the express negligence rule applies to this case.

## C

Finally, PDX also argues that even if the express negligence rule applies to the Agreement, the fact that Safeway knew of and understood its indemnity obligations satisfies the rule's requirements and obviates our need to consider the Agreement's text directly.  The express negligence rule is one of two "fair notice" requirements that govern indemnity agreements under Texas law; the other is "conspicuousness," which is not at issue here.[22]  There is no doubt that an indemnitor's actual knowledge of its obligation obviates the need for a court to consider conspicuousness under Texas law.[23]  The parties dispute, however, whether an indemnitor's actual knowledge can substitute for compliance with the express negligence rule.

Although both the Supreme Court of Texas[24] and our court[25] have suggested that there may be an actual knowledge exception to the express negligence rule, neither has so held.  Intermediate courts in Texas are split on

---

[22] *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507 (Tex. 1993).

[23] *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).

[24] *See Dresser Indus.*, 853 S.W.2d at 508 n.2 (stating, in dicta, that the "[t]he fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement").

[25] *See Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 345 (5th Cir. 2004); *Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 647 (5th Cir. 2003).

12

the question.[26] We do note that an actual knowledge exception appears inconsistent with the express negligence rule's extremely limited text-based inquiry.[27]

Nevertheless, we need not resolve whether there is an actual knowledge exception to the express negligence rule under Texas law. Even assuming that there is, PDX has offered no evidence that it would be satisfied. PDX asserts that Safeway's knowledge is "undisputed" and established conclusively by Safeway's acknowledgment that it agreed to indemnify PDX in exchange for PDX's provision of the software. However, to the extent there is an actual knowledge exception to the express negligence rule, such knowledge must be of the fact that the indemnitee's negligence or strict liability is included in the indemnity obligation. PDX, which has the burden of proving knowledge,[28] has offered no evidence whatsoever, here or below, that Safeway knew at any point that it must indemnify PDX for PDX's own negligence. Instead, PDX repeatedly argues that Safeway's acknowledgment of some general indemnity obligation suffices under the exception. But the purpose of the express negligence rule is to confirm that those on the hook for another party's

---

[26] *Compare, e.g.*, *Blankenship v. Spectra Energy Corp.*, No. 13-12-546-CV, 2013 WL 4334306, at \*5 (Tex. App.—Corpus Christi Aug. 15, 2013, no pet.) (mem. op.), *and Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("While actual notice may serve as a substitute for conspicuousness, it may not serve as a substitute for express negligence."), *with Lopez v. Garbage Man, Inc.*, No. 12-08-384-CV, 2011 WL 1259523, at \*15 (Tex. App.—Tyler Mar. 31, 2011, no pet.) (mem. op.) (holding that "actual knowledge of the release negates the common law fair notice requirements of conspicuousness and the express negligence rule"), *and Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 791-92 (Tex. App.—Austin 2002, pet. dism'd) (holding that an indemnitor's actual knowledge satisfied both of the fair notice requirements).

[27] *See, e.g.*, *DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("A fortiori, the fact that Veritas had actual notice of the indemnity and risk allocation provisions of the agreement cannot create a risk shifting provision where none exists.").

[28] *Reyes v. Storage & Processors, Inc.*, 86 S.W.3d 344, 350-51 (Tex. App.—Texarkana 2002) ("Actual knowledge is an affirmative defense that the indemnitee has the burden to prove."), *aff'd*, 134 S.W.3d 190 (Tex. 2004).

No. 15-10552

negligence are fully aware of the *extent* of that obligation;[29] an understanding merely that there is *some* obligation is not a valid alternative.

Accordingly, Safeway's purported knowledge is no substitute for compliance with the express negligence doctrine.

**IV**

Safeway urges us to reverse the lower court's judgment and enter judgment in its favor if we conclude, as we have, that the district court erred in its application of the express negligence rule. PDX has not disputed the propriety of this step. Because the parties filed cross motions for summary judgment and "neither party argues that this case presents any genuine issue of material fact," we need not remand for further consideration of the merits and instead grant partial summary judgment in Safeway's favor.[30]

Additionally, the district court awarded attorneys' fees in favor of PDX under a provision of the Agreement providing that, "[i]n any legal action . . . concerning this Agreement, the prevailing party shall be awarded its reasonable attorneys' fees [and] costs." PDX does not contest that if this court reverses the district court and enters judgment in Safeway's favor, Safeway would be the prevailing party and entitled to its fees. Accordingly, we remand to the district court for the purpose of considering the fees and costs to which Safeway is entitled under the Agreement.[31]

\*     \*     \*

For the reasons set forth above, we REVERSE the district court's entry of summary judgment in favor of PDX, VACATE the district court's award of fees and costs, RENDER partial summary judgment in Safeway's favor, and REMAND for consideration of the fees and costs that Safeway seeks to recover.

---

[29] *See, e.g.*, *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex. 1987).

[30] *Vela v. City of Houston*, 276 F.3d 659, 671 (5th Cir. 2001).

[31] *See Walker v. City of Mesquite*, 313 F.3d 246, 252 (5th Cir. 2002).

14